582 A.2d 1363

CITY OF PHILADELPHIA to Use of PHILADELPHIA HOUSING DEVELOPMENT CORPORATION, Appellee,

v.

Fern NOVICK.

Appeal of PHILADELPHIA HOUSING DEVELOPMENT CORPORATION.

Superior Court of Pennsylvania.

Submitted Sept. 24, 1990.

Filed Dec. 4, 1990.

Rebecca R. Woodside, Philadelphia, for appellant.

Susan B. Eiseman, Philadelphia, for City of Philadelphia, appellee.

Drew Salaman, Philadelphia, for Novick, appellee.

Before POPOVICH, FORD ELLIOTT and MONTGOMERY, JJ.

POPOVICH, Judge:

█ This case involves an appeal from the order of the Court of Common Pleas of Philadelphia County denying reimbursement for certain costs incurred to obtain possession of property purchased at a sheriff's sale by the appellant, Philadelphia Housing Development Corporation (PHDC).[1] We reverse.

The facts of the case were stated properly in the appellant's brief at page 3 as follows:

In September of 1987, the City of Philadelphia filed a Municipal Lien in the sum of $281.04, representing the property taxes owed for the tax year of 1985 by Fern Novick, Appellee, owner of 2802 N. Ringold Street. As a

---

1. We would note that the City of Philadelphia's involvement in the instant appeal is tangential at best. For example, (1) the City of Philadelphia is not a party to this action; (2) this proceeding did not arise under a code of the municipality; (3) this proceeding did not involve an interpretation of a statute regulating the affairs of a public authority, the Home Rule Charter, an ordinance, or a statute relating to elections; and (4) this appeal is not from a government agency. Accordingly, 42 Pa.C.S. § 762(a)(4) is inapposite and does not necessitate our transferring the case to Commonwealth Court.

The City of Philadelphia's appearance on appeal is to urge Superior Court to permit tax sale purchasers of property to recoup, pursuant to 53 P.S. § 7293, sums expended to obtain possession during the one year redemption period. This argument does not convert the City of Philadelphia into a party so as to divest Superior Court of jurisdiction to hear the dispute. The brief filed by the City of Philadelphia is one similar to those submitted by amicus curiae.

result of the above tax delinquency, the property was sold by the Sheriff of Philadelphia County at sheriff tax sale on May 18, 1988 to ... PHDC.... Appellant acquired the property through its TOPSS Program under which it acquires tax delinquent tenant-occupied properties at sheriff's sale. Due to the tenant's failure to pay for her use of the property, Appellant was forced to evict the tenant and incurred costs in the amount of $374.03 to recover possession of the property.

Appellee filed the Petition to Redeem, to which Appellant responded, requesting reimbursement for eviction costs from the redemptor, Appellee.

The lower court granted Appellee's Petition to Redeem, however, the court did not require the redeeming party to reimburse the purchaser, Appellant, for its costs to obtain possession of the property.

Further, as recounted in the appellant's Memorandum of Law in support of its answer and new matter at page 2, it appears that the appellant:

... acquired the subject property at sheriff's sale for the sole purpose of transferring title to the tenant, Carmen Thompson, under the TOPSS Program. Thereafter, the tenant failed to cooperate, make settlement, or otherwise pay for her use of the property. Whereupon, [Appellant] commenced an action in Philadelphia Municipal Court to evict the tenant. Judgment was entered in favor of [Appellant], Landlord, on November 1, 1988. An eviction of the tenant was scheduled to take place on Tuesday, February 7, 1989. [Appellant] arranged for a maintenance crew and a representative of [Appellant] to be present, and hired a moving and storage company to execute the Writ of Possession.

Another tenant, Claudette Thomas, was found to be in possession of the property and informed [Appellant] that she was paying rent to [Appellee], and that to the best of her knowledge the previous tenant had been evicted by [Appellee].

By order of court dated September 27, 1989, the appellee's Petition to Redeem was granted, but the appellant's request to have its "eviction costs" reimbursed by the appellee was denied because the court believed that the appellant's "right to possession had not vested at the time these costs were incurred." An appeal to this Court was filed thereafter.

The sole issue, one that has received no prior appellate consideration, is whether the appellant's expenditure of monies to evict a tenant from property secured at a sheriff's sale is recoupable from the redemptor as "other charges and necessary expenses of the property" under 53 P.S. § 7293(a).

The statute in question provides in relevant part:

(a) The owner of any property sold under a tax or municipal claim, or his assignees, or any party whose lien or estate has been discharged thereby, may, except as provided in subsection (c) of this section, redeem the same at any time within one year from the date of the acknowledgment of the sheriff's deed therefor, upon payment of the amount bid at such sale; the cost of drawing, acknowledging, and recording the sheriff's deed; the amount of all taxes and municipal claims, whether not entered as liens, if actually paid; the principal and interest of estates and encumbrances, not discharged by the sale and actually paid; the insurance upon the property, and other charges and necessary expenses of the property, actually paid, less rents or other income therefrom, and a sum equal to interest at the rate of ten per centum per annum thereon, from the time of each of such payments. If both owner and creditor desire to redeem, the owner shall have the right so to do only in case he pays the creditor's claim in full. If more than one creditor desires to redeem, the one who was lowest in lien at the time of sale shall have the prior right, upon payment in full of the claim of the one higher in lien. Within the year, one who was lower in lien may redeem from one higher in lien who has already redeemed, and the owner may redeem from him; and so on through out, in each

case by paying the claim of the one whose right was higher; and one higher in lien may redeem from one lower in lien, unless his claim is paid; but in each case the right must be exercised within the year.

The Act of May 16, 1923, P.L. 207, § 32, as amended, 53 P.S. § 7293(a).

This Court has had occasion in the past to interpret Section 7293(a). In doing so, we have held that reasonable expenses incurred to make property habitable are reimbursable under Section 7293(a). See *City of Philadelphia v. Watkins*, 343 Pa.Super. 380, 494 A.2d 1135 (1985).

Additionally, in *City of Philadelphia v. Chin*, 354 Pa.Super. 115, 511 A.2d 214 (1986), a panel of this Court reaffirmed *Watkins'* allowance of expenses for making premises purchased at a sheriff's sale habitable and to bring the same into compliance with municipal codes. Further, the *Chin* Court ruled, consistent with the statute in question, that expenses incurred to purchase insurance, pay taxes, and provide utilities to the property should be reimbursed by the redemptor.

Of interest to this Court are the observations made in *Chin* that:

We reject Chin's contention that appellant can recover only those costs necessary to keep the property in the same condition in which it existed at the time when it was purchased at sheriff's sale. Otherwise, a dilapidated, uninhabitable building will have to remain in that condition until the period for redemption has expired. Such an interpretation would be absurd; it would ignore the interests of the parties, the municipality and the public. We will not place such a limitation upon the right to recover amounts expended to make the premises habitable.

The statute also required that a redeeming property owner reimburse the purchaser for the cost of drawing, acknowledging, and recording the sheriff's deed; for taxes paid by the purchaser, for the insurance coverage purchased for the property; and for the cost of providing water, sewer, gas and electric power to the property.

Even appellee agrees that these items are properly the subject of reimbursement. Moreover, they are to bear interest at the rate of ten (10%) percent per annum from the dates on which payments were made. The redeeming property owner, however, is entitled to a credit for the rents collected by the purchaser prior to redemption. 354 Pa.Super. at 119, 511 A.2d at 216.

The fact that the title to the property sold is a defeasible one and does not mature into a legal title until the period of redemption has expired, see, e.g., *Easton v. Sulkin, et ux.,* 19 D. & C. 152 (Northampton County, 1933), is not dispositive of the question as to what expenses incurred with regard to property sold at a sheriff's sale are recoverable as "necessary expenses" made during the redemption period. This is so whether the costs involved were to maintain the property, render it habitable or expended as incidental to the operation of private or commercial property.

If the point in time when legal title came into fruition for the purchaser was the pivotal stage in deciding when expenses made were recoverable, then no costs incurred prior to the one year redemption period could be recouped. This is just not so under Section 7293(a). Accordingly, we deem a case-by-case approach is the prudent course to pursue in this redemption arena.

From our review of the few cases on the issue at hand, as well as the applicable statute governing redemption, we make the initial observation that Section 7293(a) permits a redemptor to receive credit for "rent" received by a purchaser in determining what monies are due and payable to regain possession of the property sold at sheriff's sale. If such is the case, and there is no disputing the accuracy of such a statement, then, logically, it would appear permissible for a purchaser to obtain the cost incurred in either collecting or generating "rent". Otherwise, the property could merely lay dormant if no tenant resided there during the redemption period, lest the purchaser be fearful that costs expended to rent the property would not be recoupable upon redemption. Another possible scenario, replayed

instantly, would be where the premises were leased but the tenant was not paying rent. Should the purchaser let the property remain as is (without any money being paid) until the redemption period expired? We think not, for no business person would acquire realty and permit it to sit idle.

When property is sold at sheriff's sale, it is done so because of a delinquency in the payment of taxes. The governing body initiating the sale does so to place the property back on the tax roles. Were we to preclude a purchaser the ability to recoup monies expended to make purchased property profitably or inhabited by rent-paying tenants, we would be "short-circuiting" one of the beneficial objectives of implementing a sheriff's sale, i.e., generating of monies to fuel government, not to mention making the property productive.

If we were to hold to the contrary, then the purchaser at a sheriff's sale would be advised to do nothing to the property obtained (during the redemption period) for fear that efforts to make the property habitable or profitable would be for naught. There is nothing in the law that requires that the "status quo" be maintained during the redemption period. See *Chin,* supra; *Watkins,* supra. If such were the case, buildings that had fallen into disrepair and were uninhabitable would remain so. As recounted in the *Chin* and *Watkins* cases, expenses to improve property are to be reimbursed by the original owner seeking to redeem said property.

Likewise, if the redemptor is entitled to credit for "rents" received by a purchaser during the redemption period, and property may be improved and need not lay dormant so as to maintain the status quo during the same time-frame, we find that the purchaser's efforts to "evict" non-paying tenants from the purchased property to make it productive and rent generating should be an item of cost subject to being repaid by the redemptor.

This Court is of the mind that, given our prior rulings allowing reimbursement to a purchaser for money expended to make a piece of property habitable, and, of necessity,

rentable as commercial property, we are not dissuaded from our position to allow expenses incurred to evict a delinquent tenant from property purchased at a sheriff's sale to be recouped by a purchaser from the redemptor.

Order reversed.