**Yoh RUKUSON, Appellant,**

v.

**Sabrina A. DANTZLER and the Tax Claim Bureau of Dauphin County.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2002.

Decided Dec. 16, 2002.

Norman M. Yoffe, Camp Hill, for appellant.

Francis A. Zulli, Harrisburg, for appellees.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Yoh Rukuson appeals from an order of the Court of Common Pleas of Dauphin County that denied post-trial motions and granted the count of Rukuson's complaint in equity requesting that the court void the judicial tax sale of a property owned by Rukuson in the City of Harrisburg for lack of proper notice, denied Rukuson's request for damages, granted the counterclaim of the purchaser Sabrina A. Dantzler against Rukuson in the amount of $13,471.85 for the cost of improvements and also ordered Rukuson to pay Dantzler the $851.83 purchase price within thirty days. Rukuson questions whether, when a tax sale is voided, the owner is required to reimburse the purchaser for the cost of renovations, restorations and repairs made by the purchaser after the sale; whether, if there is such a duty, the purchaser is entitled to the cost of the improvements rather than the value added; and whether the trial court properly justified the monetary award to the tax sale purchaser by equating the same to the value added to the real estate, when there was no evidence or prior finding of fact to support such a conclusion.

The trial court's opinion pursuant to Pa. R.A.P.1925 stated that the Tax Claim Bureau of Dauphin County (Tax Claim Bureau) held a judicial tax sale of the property at 308 Reilly Street, Harrisburg, which was owned by Rukuson, on March 31, 2000. Rukuson was over $4,000 delinquent in his real estate taxes, having failed to pay some or all taxes for the tax years 1996, 1997, 1998, 1999 and 2000. Dantzler purchased the property at the sale for a total of $851.83. At the time of the sale the property was vacant and in a blighted condition. There was no electricity or water service to the building, and there was no kitchen or any working bathrooms. The roof leaked, and the walls had lost plaster as a result.

In May 2000 the Tax Claim Bureau tendered a deed to Dantzler, and she immediately began a project to rehabilitate the property. She hired contractors and performed much work herself to have installed electric service panels, electrical wiring, fixtures, insulation, drywall and siding. The trial court noted that Rukuson, who has resided in Philadelphia since 1997, was aware of tax delinquencies because he previously had signed for certified notice of an attempted upset tax sale in 1998; however, the same notice was not provided for the

March 2000 judicial sale. On that basis the court overturned the sale. The trial court noted, however, that the record supported an award to Dantzler on her counter-claim in equity for money she spent for capital improvements to turn this dilapidated structure into a habitable and functioning home.

Dantzler did not know of the defect in title, and she came into court with clean hands, whereas Rukuson was seeking the benefits of Dantzler's labor and a reward for failing to pay taxes on a blighted property. The court rejected Rukuson's argument that the court could not order reimbursement for expenditures made within two years of the tax purchase under Section 20 of the Act of April 12, 1842, P.L. 262, 72 P.S. § 5875.[1] The court questioned the applicability of this section, which was enacted before the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. §§ 5860.101–5860.803. Further, 72 P.S. § 5875 provided in part that there should be no recovery for improvements "if the defects in the tax title shall be known to the purchaser at the time of sale," and there was no question that Dantzler did not know of defects in the tax title.

■ The trial court found that the improvements made by Dantzler benefited the real estate and therefore were a proper basis for an award. The court cited *City of Philadelphia v. Watkins*, 343 Pa.Super. 380, 494 A.2d 1135 (1985), where it was held that as a matter of equity a lower court acted properly when it ordered the redeeming property owner to reimburse the purchaser for improvements made to a property after purchase at tax sale. The court also cited *City of Philadelphia v. King Kai Chin*, 354 Pa.Super. 115, 511 A.2d 214 (1986), holding that a purchaser at a municipal tax sale was entitled to reimbursement from a redeeming property owner for amounts expended to make a premises habitable.[2]

■ Rukuson first repeats his argument that a frustrated tax sale buyer is not entitled to any recovery from the owner of the cost or value of improvements made within two years of the sale under 72 P.S. § 5875. He asserts that cases hold that

---

1. Section 5875 provides in part:

    No law respecting the sale of land for taxes shall be so construed by any court as to prevent a recovery of the value of the improvements made, in all cases whatsoever where a recovery is effected against a purchaser at a sale for taxes, or other person claiming under him; but the acts of assembly shall be so construed that a recovery for improvements as aforesaid shall be an incident in all cases whatsoever, where there is a recovery against the tax title, without regard to the nature of the defects of said title, and wherever any person claiming under such tax title may be out of possession, and on account of defects in said title fail to recover the land, the jury under the direction of the court trying the cause shall assess the value of the improvement made by such person, or those under whom he claims, and shall fix the time within which said assessment shall be paid by the defendant or defendants; and if the sum so assessed be not paid within the time specified by the said jury, the title of the plaintiff shall thenceforth be confirmed and rendered good and valid to the land in dispute, as against the defendant, and all claiming under him ... Provided, That no improvements made within two years after the sale of said land for taxes shall be paid for by the party recovering or purchasing the same: Provided also, That if the defects in the tax title shall be known to purchaser at the time of the sale, or if a tender of the redemption money be made within two years of sale, he shall not be allowed for his improvement....

2. The Court's review of a final decree in equity is limited to determining whether there was an error of law or whether the chancellor abused his or her discretion. *Northview Motors, Inc. v. Commonwealth, Attorney General*, 128 Pa.Cmwlth. 54, 562 A.2d 977 (1989).

such a buyer is a mere volunteer who cannot recover either that which she pays to the tax claim bureau or that which she expends to repair, restore or improve the property. Rukuson cites *Gaul v. McLaughlin*, 207 Pa.Super. 434, 217 A.2d 757 (1966), where the court in a quiet title action held that purchasers of several lots at a treasurer's sale of which the true owners had not received notice were mere volunteers and that their purchase of the property and payment of taxes thereafter were voluntary acts for which they had no right of reimbursement. He cites *Fidei v. Underwood*, 291 Pa.Super. 375, 435 A.2d 1275 (1981), which, relying upon *Gaul*, held that there was no equitable basis for compelling true owners who did not receive notice of a sale to reimburse taxes and other costs paid for land without their proven knowledge, request or even consent. In addition Rukuson refers to this Court's decision in *In re Upset Sale (Skibo Property)*, 111 Pa.Cmwlth.33, 533 A.2d 487 (1987), *rev'd*, 522 Pa. 230, 560 A.2d 1388 (1989), holding that a disappointed purchaser at a tax sale could not recover costs from the property owner that were incurred in participating in the sale if it were later held to be invalid but could proceed against the taxing unit, which had warranted that statutory requirements had been met. Rukuson fails to note that the Supreme Court reversed on the ground of the newly raised but non-waivable defense of governmental immunity.

Rukuson contends that when the trial court questioned the applicability of 72 P.S. § 5875 in view of the adoption of the Real Estate Tax Sale Law, it ignored the first sentence of Section 5875, which purports to apply to all other legislation on the topic of tax sales. Further he argues that principles of statutory construction require that the 1842 act and the Real Estate Tax Sale Law be read together, if possible, and that the more particular provisions of the earlier statute relating to improvements should control over the later, general statute.

The Court agrees with the trial court's interpretation of the statutes involved here. The Court has stated previously: "The dominant purposes of the Real Estate Tax Sale Law were to provide speedier and more efficient procedures for enforcing tax liens and to improve the quality of titles obtained at a tax sale." *Povlow v. Brown*, 12 Pa.Cmwlth. 303, 307, 315 A.2d 375, 377 (1974). The Court notes that Section 501(c) of the Real Estate Tax Sale Law, 72 P.S. § 5860.501(c), provides: "There shall be no redemption of any property after the actual sale thereof." Thus this much later provision of the Real Estate Tax Sale Law is in conflict with the proviso of Section 5875 that relates to "tender of the redemption money" within two years of the sale.

The Court observes that Section 15 of the Act of May 29, 1931, P.L. 280, *as amended*, 72 P.S. § 5971o, relating to redemption money, provided that an owner or lien creditor of a property sold for taxes could redeem it by payment within two years of specified items constituting "redemption money." However, this section was repealed insofar as it applies to taxing districts coming within the provisions of or operating under the Real Estate Tax Sale Law by Section 801 of that Law, 72 P.S. § 5860.801. Consequently the concern shown in 72 P.S. § 5875 for rights of redemption during a two-year period after a sale no longer apply. The Court agrees with the trial court that where Dantzler did not know or have reason to know of the defects in the title that she secured at the tax sale, she is entitled to recover for improvements that she made to the property.

■ Rukuson's second and third arguments challenge the trial court's assess-

ment of an amount equal to the cost of the repairs made by Dantzler, as proved by her testimony and exhibits at trial, as the award for the value of the improvements. He quotes from *United States v. 137.02 Acres of Land*, 334 F.Supp. 1021, 1025 (M.D.Pa.1971): "It is the value of the improvements and not their cost which measures the right of recovery of the holder of defective title." Further, Rukuson asserts that although the trial court's opinion found that the improvements made by Dantzler permanently benefited the property, the court made no such finding in its adjudication, and even if it did, there was no trial evidence to support the crucial fact that the expenditures added any value to the real estate, and if so, how much.

Both sides in this case refer to *Halgus Land Co. v. Holt*, 224 Pa.Super. 103, 303 A.2d 493 (1973) (affirming by an equally divided court), without acknowledging that the published opinion in that case is a concurring and dissenting opinion. Rukuson's citation to that opinion for the proposition that evidence of cost does not support a recovery and is manifestly unjust, when the trial court's order based upon cost evidence was affirmed, is improper. Rukuson also refers to *In re: LaBracio*, 32 Pa. D. & C.3d (1984), where the court discussed the meaning of "improvement" to property and adopted a dictionary definition that it is a valuable addition to property or amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital and intended to enhance its value, beauty or utility or to adapt it for other purposes.

In the present case the trial court made findings in the text of its opinion in support of its order to the effect that this property was vacant and in a blighted condition, with no electrical or water service, a leaking roof, walls gutted of plaster and no kitchen or working bathrooms.

The property obviously had not been occupied for years, and it was not habitable in that state. Although it is conceivable, as Rukuson argues, that a purchaser might spend a lot of money without substantially enhancing the value of a property, in this case the trial court found that the money that Dantzler spent turned a dilapidated structure into a functioning home. Contrary to Rukuson's position, the record here fully supports the finding that Dantzler made valuable improvements to the property. The federal court cited by Rukuson, after specifying that the value of improvements measured the right of recovery, also stated: "The cost of improvements has been held to be some evidence of their value." *137.02 Acres of Land*, 334 F.Supp. at 1025. The Court finds no error in the calculation of the value of the improvements. Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 16th day of December, 2002, the order of the Court of Common Pleas of Dauphin County is affirmed.